**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

UNIVERSITY OF KANSAS HOSPITAL AUTHORITY,

*Plaintiff,*

v.

CVS HEALTH CORPORATION; CAREMARKPCS HEALTH, LLC; CAREMARK, LLC; WELLPARTNER, LLC; and JOHN DOES 1-15,

*Defendants.*

Case No. 2:26-cv-2292-KHV-BGS

# STIPULATED ORDER GOVERNING THE PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION

Pursuant to the Federal Rules of Civil Procedure, University of Kansas Hospital Authority ("UKHA" or "Plaintiff"), and Defendants, CVS Health Corporation ("CVS Health"), CaremarkPCS Health, LLC ("CaremarkPCS"), Caremark, LLC d/b/a CVS Specialty ("Caremark LLC" or "CVS Specialty"), and Wellpartner, LLC ("Wellpartner") (collectively, "Defendants"), submit the following Stipulated Order Governing Production of Documents and Electronically Stored Information ("Stipulated Order"). The Court being sufficiently advised, this Stipulated Order is entered to govern all documents, including electronically stored information ("ESI"), that will be collected and produced in this Action.

## I. GENERAL PROVISIONS

1. This Stipulated Order on discovery and production of Documents and ESI shall govern the format of produced discovery in the above-captioned action (the "Action") and related issues, as well as the Parties' agreement regarding non-waiver.
2. This Stipulated Order does not determine the relevance, discoverability, confidentiality, authenticity or admissibility of any hard copy documents or ESI of the Parties, does not expand any record preservation requirements and does not limit any protection provided by the Federal Rules of Civil Procedure, common law, applicable statutes or otherwise.
3. This Stipulated Order does not waive any objections as to discoverability, confidentiality, authenticity, or admissibility of hard copy documents or ESI in the Action, or any objections raised by a Party in its written responses to specific discovery requests served in the Action. As to the

format of document production, this Stipulated Order governs any objections raised in written responses to discovery requests.

4. Nothing in this Stipulated Order shall be interpreted to require the disclosure of any hard copy documents or ESI that a Party contends are protected from disclosure by the attorney-client privilege, work product doctrine or any other applicable privilege or protection.

5. This Stipulated Order is subject to, and does not modify or supersede, the terms and conditions of any Stipulated Protective Order entered in this Action.

6. Notwithstanding this Stipulated Order, the Parties may, by mutual written agreement, deviate from the protocols set forth herein as to specific Documents or categories of Documents, without leave of the Court, provided that such agreement is memorialized in writing. Any such deviation applies only to the Documents or categories of Documents identified in the agreement.

7. In the event of any conflict between the body of this Stipulated Order and Exhibit A, the body of this Stipulated Order controls.

## II. DEFINITIONS

1. **"Producing Party"** means a party that produces Documents, Electronically Stored Information, or other material in connection with this Action in response to document requests, subpoenas, compulsory process, or voluntarily.

2. **"Receiving Party"** means a party that receives Documents, Electronically Stored Information, or other material from a Producing Party in connection with this Action.

3. **"Document"** means a document that is maintained in hard copy or paper form.

4. **"Electronically Stored Information," "ESI," or "Electronic Files"** means computer-generated files that are maintained in electronic form in the usual course of business. ESI includes, but is not limited to, email (*e.g.*, .msg), spreadsheet files (*e.g.*, .xls files), slide presentation files (*e.g.*, .ppt), word processing files (*e.g.*, .doc files), audio or visual files (*e.g.*, .wav, .mpeg), image files (*e.g.*, .pdf), and container files (*e.g.*, .pst, .zip).

5. **"Native Format" or "Native File"** means ESI in the electronic format of the application in which the ESI is usually created, viewed, and/or modified.

6. **"Metadata"** means (i) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; and/or (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system. "Metadata" also includes information outside of a Native File that is generated and supplied as part of the document production: e.g., Custodian, Alternative Custodian, BeginningBates, EndingBates, generated by the eDiscovery process, including custodian information.

7. **"Secure File Transfer Protocol"** refers to a method of encrypting electronically transmitted information in accordance with HIPAA and National Institute of Standards and Technology guidelines.

8. **"Custodian(s)"** means a person who is responsible for, or has administrative control of, or has access to ESI or responsive documents.

9. **"Custodial Data Source"** means any data source used for business purposes that is within a Party's possession, custody or control in or on which a custodian may store potentially relevant documents or ESI, including, for example, an individual's work email file company-issued computers. Where agreed upon by the parties, Custodial Data Sources may also include responsive communications on company-issued mobile devices or company messaging applications (e.g., Teams, Slack, SMS, iMessage).

10. **"Non-Custodial Data Source"** means any data source that is within a Party's possession, custody or control, which is not kept or maintained by any particular custodian but that may contain potentially relevant documents or ESI, including data sources used by any department, business unit, or division of any Party, shared drives, and shared storage systems that may contain potentially relevant information.

11. **"OCR"** means Optical Character Recognition, and is the machine recognition of printed characters from Image Files or other non-searchable text contained in a document into machine-encoded text so that the text can be indexed and searched for specific characters, words, or phrases.

12. "Artificial Intelligence" or "AI" means any software tool or system that uses machine learning, large language models, or other generative or predictive technology to classify, code, summarize, or otherwise make determinations about Documents or ESI, including determinations of relevance, responsiveness, or privilege.

## III. ESI PROVISIONS

1. **Scope of ESI.** On or before October 15, or at a later time as agreed to by the Parties, the Parties will meet and confer regarding the scope of ESI productions, the methods to search for and identify relevant and responsive ESI, and the methods to filter out ESI that is neither relevant nor responsive. Subject to the General Provisions, the Parties shall discuss reasonable and proportional review protocols, search terms, Custodians (including name and title of each Custodian), Custodial Data Sources, Non-Custodial Data Sources, relevant time periods for document requests, and any problems reasonably anticipated to arise in connection with e-discovery and time limitations on the ESI that is searched. Nothing in this Order shall preclude either Party from employing analytics, including predictive coding, or technology-assisted review, including the use of Artificial Intelligence, during the course of its review and production, provided however, a Party that intends to use analytics, predictive coding, or technology-assisted review to remove or produce documents in lieu of attorney review of those documents, the Party shall first disclose such intent to the other side, and meet and confer regarding the process intended to be used.

2. **Production Formats.** The Parties agree that ESI and Documents shall be produced in accordance with the following specifications:

   a. A cover letter or e-mail shall be included with each production and shall include information sufficient to identify all accompanying media (hard drive, thumb drive, DVD, CD, secure FTP), shall identify each production on such media by assigning a sequential Production Volume name or number, and shall include the Bates range for the Documents and/or ESI produced in each volume. The Bates Number for each page of each document shall be created so as to identify the Producing Party or Parties by using a unique prefix, a hyphen, and a zero-padded bates number of sufficient length to accommodate the volume of documents anticipated to be produced in the matter (e.g., UKHA-0000001 for Plaintiff). Bates numbers shall not include spaces or any other non-alphanumeric characters. Documents will be endorsed consecutively with Bates numbers. If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in the cover letter or email accompanying the production.

   b. If a Document or Electronic File is produced containing information designated as "Confidential," or "Highly Confidential – Attorneys' Eyes Only" pursuant to the Stipulated Protective Order, the confidentiality designation shall also be "burned" onto the image at a location that does not obliterate, conceal or interfere with any information from the source document (preferably in the bottom left of the image).

   c. Nothing herein shall restrict the Producing Party's right to object to the Receiving Party's discovery requests and to withhold documents on the basis of those objections. The Producing Party should submit any attachments in a manner from which it is reasonable to determine the document to which it relates. Copies which differ in any respect from an original (because, by way of example only, handwritten or printed notations have been added) should be produced separately. If a party wants to withhold a wholly privileged Electronic File that is part of a family group containing responsive Electronic Files that are not wholly privileged, the party shall produce a placeholder TIFF image for the Electronic File in lieu of producing it. For Electronic Files that are withheld as privileged, the placeholder shall state: "Document Withheld as Privileged." Placeholder images shall also be branded with a Bates number. The metadata fields set forth in this Stipulated Order shall be populated for files withheld, except where redacted and placed on a privilege log pursuant to Section V(3) below. If a Producing Party, for any reason, subsequently produces an Electronic File withheld and place-holdered pursuant to this Section, the party shall produce that Electronic File pursuant to the production format specifications of this Order that would have been applicable to the Electronic File had it been produced initially as opposed to place-holdered, except that the Producing Party shall apply an appropriate numerical suffix to the Bates number of the file to account for instances where the produced version of the file occupies more pages than the original placeholder image for the file. As an example, if a Producing Party initially withholds a five-page Word document as

privileged and provides a placeholder image branded with the number UKHA-0000001, the subsequently produced version of that five-page Word document must be branded: UKHA-0000001.001 through UKHA-0000001.005.

d. The Parties need not produce container files (e.g., .zip) so long as the responsive contents of those files are produced in accordance with the specifications of this Order.

e. Unless redactions are necessary to remove privileged material, Electronic Files produced in TIFF shall be produced so that hidden text and track changes are showing and reflected in both the image and text files.

f. If a responsive Electronic File otherwise subject to production in TIFF under this Order cannot be converted to TIFF without error due to corruption, password protection, or some other issue, the Electronic File shall be produced in native pursuant to the requirements set forth below.

g. Documents and Electronic Files shall be submitted in the following electronic format provided that such copies are true, correct, and complete copies of the original documents:

   i. Submit all spreadsheets, including Microsoft Excel and Access files, .CSV files, and other similar spreadsheet files, as well as PowerPoint and other presentation or slide file formats, in Native Format with searchable extracted text and metadata, except if any such files are being redacted. If redactions of spreadsheet files or PowerPoint/presentation/slide-file-format files are necessary, then the files may be produced in redacted form in TIFF provided that the files are TIFFed in a manner that will yield production of all non-privileged content, including, as examples, speaker's notes, hidden rows and columns, and comments. Files produced with redactions pursuant to this paragraph shall also be produced with metadata and searchable text for all portions of the files that have not been redacted. If a file required to be produced in Native under this section cannot be reasonably produced in redacted form as a TIFF, the Parties shall meet and confer regarding a suitable alternative production format. If the Parties encounter Access files or audio or video files containing privileged content, the Parties shall meet and confer to determine a suitable manner of producing the non-privileged content contained in these files.

   ii. Submit audio or video files in Native Format as .wav or .mpg files with searchable metadata. If the Parties encounter audio or video files containing privileged content, the Parties shall meet and confer to determine a suitable manner of producing the non-privileged content contained in these files.

   iii. Unless redacted for privilege, submit email, attachments, and all other ESI in TIFF form with searchable text and metadata. If a file is redacted for privilege, then a Party shall use industry standard OCR technology to generate and supply searchable text for all portions of the file that are not redacted for privilege.

iv. Submit Documents stored in hard copy in TIFF format with metadata and searchable text generated using industry standard OCR technology.

v. **Database Load Files / Cross-Reference Files.** The Parties shall provide their productions with load and data files reasonably necessary to allow the Receiving Party to load documents into its document review platform. Such files will include the fields listed in Exhibit A to this Order. If issues arise with the format of a Party's load or data files, the Parties will meet and confer to attempt to resolve any issues.

vi. **Structured Data.** Structured data shall be produced in the form in which it is ordinarily maintained or in another reasonably usable structured format, including, as appropriate, delimited text files, Microsoft Excel spreadsheets, CSV files, or other formats reasonably suitable for loading into standard litigation support databases. The Parties shall meet and confer regarding the appropriate production format for structured data that cannot reasonably be produced in accordance with the foregoing or for non-standard data requests.

vii. Submit redacted documents in TIFF, and the PDF will be redacted and produced with an accompanying metadata load file, subject to redacting file names or subject lines for an applicable privilege. Material that has been redacted must be clearly marked and labeled "REDACTED" and specify the basis on which it was redacted (i.e., privileged, etc.). The Producing Party will provide searchable text for those portions of the document that have not been redacted.

viii. When metadata is required to be provided by this Stipulated Order, the Parties shall use reasonable efforts to provide the metadata identified in Exhibit A to this Order.

ix. TIFF files and metadata should be provided in a format suitable for loading into standard litigation support databases such as Concordance or Relativity. TIFF files shall be generated as single-page, 300 dpi resolution, Group IV TIFFs with the associated text and metadata specified in this Order. Native files without color will be converted to and produced as black-and-white TIFF images. Native files with color, will be converted to and produced as color images with LZW compression.

h. The page orientation (i.e., portrait or landscape) of a TIFF image file shall be the same as the underlying document from which the TIFF image is created. The page size of a TIFF image file shall be 8.5 x 11 inches unless, in the reasonable judgment of the Producing Party, a particular document requires a different page size. Each TIFF image shall be branded with a Bates number that must: (1) be unique across the entire document production; (2) maintain a constant length of seven numeric digits (including 0-padding) across the entire production; and (3) be sequential within a given document.

i. When Electronic Files are produced in Native Format, the Producing Party shall provide a corresponding single-page TIFF placeholder stating, "Document Produced in Native." The placeholder shall be branded with a Bates number. The produced version of the Electronic

File shall be named with the Bates number affixed to the TIFF placeholder corresponding to the Electronic File.

j. **Text Searchability:** TIFF productions shall be accompanied by a multi-page text file, which shall be created by extracting the text directly from the underlying native Electronic File (unless the Electronic File must be redacted prior to production) or by applying industry standard OCR to Documents. Each text file shall be named with the beginning Bates number of the Electronic Files or Documents to which the text file relates followed by the extension ".txt." The OCR files shall be provided as document-level files suitable for importing into commercially available document management or litigation support software such as Concordance or Relativity.

k. **Scanning and Unitization Requirements:** The Parties agree to use reasonable efforts to ensure that Documents are logically unitized such that: (a) multiple, distinct documents are not merged into a document range; and (b) distinct documents are not split into multiple document ranges. The Parties agree to use reasonable efforts to maintain the family relationships of Documents by scanning and Bates numbering those documents in sequential order. This provision does not obligate any Party to produce documents in a manner other than the way in which those documents were kept in the ordinary course of business.

l. This Order does not govern the manner in which information maintained in enterprise level databases must be produced. The Parties shall meet and confer, as necessary, regarding the production format of information maintained in such databases.

m. Where possible, productions of ESI should be submitted via a Secure File Transfer Protocol. Where not possible, adhere to the following guidelines:

i. For productions that cannot be submitted via a Secure File Transfer Protocol, use hard disk drives or SSDs, with BitLocker encryption.

n. All Documents and ESI produced in electronic format shall be scanned for viruses using reasonable commercial efforts prior to submission.

o. The Producing Party need only produce a single copy of a particular electronic document.

p. **Family Relationships of Electronic Files:** Parent-child relationships between Electronic Files (e.g., the association between an attachment and its parent email, or a spreadsheet embedded within a word processing document), must be preserved by assigning sequential Bates numbers to all files within a parent-child group and by populating accurate BegAttach and EndAttach values for all files within a parent-child group.

q. **Global Deduplication:** If there are identical copies of a document, only one copy of the document needs to be produced. A Producing Party may de-duplicate ESI globally, and apply threading to emails, before review and production, provided however, that an email that includes content in the BCC or other blind copy field shall not be treated as a duplicate

of an email that does not include content in the BCC or other blind copy field, even if all remaining content in the email is identical. Removal of duplicate documents should be done on exact duplicate documents. If a Producing Party elects to de-duplicate, the Producing Party shall identify ESI duplicates by using industry standard MD5 or SHA-1 algorithms (or a reasonably equivalent alternative) to create and compare hash values for exact duplicates only. Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates. When applying global deduplication, metadata identifying all custodians in possession of each document that is removed as a duplicate must be provided in the "Alternative Custodian" metadata field, to the extent applicable. The Parties agree that production of ESI globally de-duplicated in accordance with the provisions of this Order shall constitute production of ESI as maintained in the ordinary course of business.

r. **Email Thread Suppression:** Email threads are email communications that contain prior or lesser-included email communications. A most inclusive email thread is one that contains all of the prior or lesser-included emails and attachments, including each branch of the email thread. A Producing Party may use e-mail thread suppression to exclude email from production, provided however, that an email that includes an attachment or content in the BCC or other blind copy field shall not be treated as a lesser-included version of an email that does not include the attachment or content, even if all remaining content in the email is identical. Upon reasonable request, the Producing Party will produce a less inclusive copy of a document.

s. **Password Protected Files:** The Producing Party shall make reasonable efforts to ensure that encrypted or password-protected documents are successfully processed for review and production and the decrypted document is produced. To the extent such documents are not successfully processed, the Producing Party agrees to, upon request from the Receiving Party identifying the Bates number for such document: (a) produce a slipsheet for each encrypted or password-protected document that cannot be successfully processed indicating that the document cannot be decrypted; and (b) provide the metadata for the document, as required under this section, to the extent it can be reasonably extracted from the file in its encrypted form. If an attachment to a produced email is encrypted and cannot be decrypted with reasonable efforts, the Producing Party shall provide a slipsheet for the attachment.

## IV. PRESERVATION

1. The Parties shall take reasonable and good faith steps to preserve documents within their possession, custody or control that they know, or reasonably should know, are relevant to the claims and defenses at issue in this Action and shall continue to preserve such information during the pendency of this Action. During the pendency of this Action, to reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the Parties agree that:

a. The parties will meet and confer about any limitations to timeframe or scope of ESI for preservation.

b. The Parties shall take reasonable steps to ensure that the e-mail of identified custodians in a Party's possession, custody or control shall not be permanently deleted and that ESI maintained by the individual custodians that is in a Party's possession, custody, or control shall not be altered.

2. A Party may use any reasonable steps to preserve documents consistent with the Party's record management systems, routine computer operation, ordinary business practices, and the preservation requirements of this Stipulated Order. As used in this Stipulated Order, "reasonable steps" include: (a) identifying individuals reasonably likely to possess or control potentially relevant documents; (b) notifying such individuals of their duties to preserve potentially relevant documents; and (c) periodically reminding such individuals of their preservation obligations. For purposes of preservation, this Stipulated Order does not obligate any Party to segregate or collect potentially relevant documents unless the Party has a reason to anticipate that, absent such actions, relevant information is likely to be lost during the pendency of this Action.

3. The Parties agree to take reasonable steps to preserve records in a form that will permit the collection and production of metadata that is necessary to fulfill their agreement on the form of production.

## V. DOCUMENTS PROTECTED FROM DISCOVERY

1. If documents are withheld on the basis of privilege, the withholding Party shall produce a privilege log with an entry for every document withheld, including each family group member (e.g., attachments), and in the format below.

2. The Parties agree to include the following fields on the privilege log for each responsive document or ESI withheld or redacted: (a) a unique identification number (or Bates number for redacted documents); (b) a description of the specific grounds for claim of privilege; (c) the privilege type claimed (*i.e.*, Attorney-Client, Attorney Work Product); (d) the relevant legal source (*i.e.*, the attorney(s) whose involvement supports the claim of privilege); (e) the document's family relationship (*i.e.*, parent, child, standalone); (f) document type (*e.g.*, email, spreadsheet); (g) Sort Date and Time/Family Date and Time; (h) Filename; and (i) for emails, From, To, CC, BCC, and Subject (redacted only to the extent it reveals privileged information). All attorney names on the log must be denoted with an asterisk ("*") and indicate whether the attorneys are in-house or outside counsel for the Party.

3. If a Requesting Party is not reasonably able to evaluate a claim of privilege based on the information received in a Producing Party's initial privilege log, the Requesting Party may request that further information be provided to substantiate a claim of privilege for a specific withheld or redacted document, and the parties will meet and confer regarding the request. The Parties agree to exercise requests for additional information in good faith and judiciously with the goal of minimizing the expense and burden of the privilege logging exercise.

4. In the event that a Party inadvertently discloses/produces privileged or otherwise protected Documents or ESI, such inadvertent disclosure—including requirements for notification of inadvertent disclosure or production and for return of such inadvertently disclosed or produced Documents or ESI—shall be governed by any Protective Order entered in this Action.

5. The Parties agree that they are not required to log attorney-client or work product privileged communications relating to the subject matter of this Action that occurred after the filing of the Complaint in this Action, which are sent from, or to, Counsel for either Party.

6. **Requirement to Abide by Rules of Professional Conduct.** Nothing in this Order relieves the Parties' counsel of any requirements under the applicable rules of professional conduct.

7. **Court's Jurisdiction.** The Court retains jurisdiction to interpret and enforce the terms of this Order.

## VI. MODIFICATION OF STIPULATED ORDER

This Stipulated Order may be modified for good cause shown. The Parties shall jointly submit any proposed modifications. If the Parties cannot resolve their disagreements regarding those modifications, the Parties shall submit their competing proposals and a summary of their dispute to the Court for resolution.

It is so Stipulated, through Counsel of Record,

**FRIER LEVITT LLC**
Attorneys for Plaintiff

By: */s/ Todd Mizeski*
Name: Todd Mizeski
Date: September 24, 2026

______________________________

Attorneys for Defendants

By: */s/ Cailynn Hayter*
Name: Cailynn Hayter
Date: September 24, 2026

**IT IS SO ORDERED.**

Dated September 28, 2026, at Wichita, Kansas.

/s/ Brooks Severson
Brooks G. Severson
United States Magistrate Judge